I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL PLF w/FORM (OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF RECORD IN THIS ACTION ON THIS DATE.

DATED: 10-02-13

DEPUTY CLERK

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

OCT - 2 2013

CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ABELARDO MONTOYA, | Case No. ED CV 13-850-JVS (DFM) |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| BRENDA CASH et al., | |
| Defendants. | |

Plaintiff, a California state prisoner, filed a pro se civil rights complaint on May 17, 2013, after being granted leave to proceed in forma pauperis. This Court dismissed Plaintiff's original complaint with leave to amend. On July 22, 2013, Plaintiff filed a first amended complaint ("FAC"). The FAC names the following defendants: (1) Jeffrey Beard, Secretary of the California Department of Corrections and Rehabilitation, in his individual and official capacities; (2) Brenda Cash, Warden, California Institution for Men ("CIM"), in her individual and official capacities; (3) Dr. Lee, Chief Medical Officer of CIM, in his individual and official capacities; (4) J. N. Katavich, Warden, Wasco State Prison ("WSP"), in his individual and official capacities; (5) Dr. Ashraf Youssef, Chief Medical Officer of WSP, in his individual and official

1 capacities; and (6) Dr. Jonathan Cho, a medical doctor at CIM, in his
2 individual and official capacities.
3      From the best the Court can tell, the following is the gravamen of
4 Plaintiff's FAC:
5      On approximately April 27, 2012, while in custody at WSP, Plaintiff
6 slipped and fell and thereby injured his back. Plaintiff told medical staff at
7 WSP that he was in pain. Four or five days later, prison officials transferred
8 Plaintiff to CIM by bus. Due to his back pain, Plaintiff was "in agony" during
9 the bus ride. Once at CIM, prison officials assigned Plaintiff a "top bunk."
10      Twenty days after arriving at CIM, Plaintiff was treated by Dr. Cho,
11 who was frustrated by Plaintiff's inability to communicate in English and
12 "waved off" Plaintiff's claims of back pain as dishonest. Dr. Cho denied
13 Plaintiff's request for a doctor's order for a lower bunk, a special mattress, and
14 a walking cane. Seven months later, in December 2012, Dr. Cho ordered an
15 MRI examination which showed: (1) cysts involving right kidney; (2) short
16 pedicles; (3) straightening of lumbar lordosis; (4) severe spinal stenosis; and (5)
17 minor degenerative changes.
18      In accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court now
19 has screened the FAC before ordering service for purposes of determining
20 whether the action is frivolous or malicious; or fails to state a claim on which
21 relief might be granted; or seeks monetary relief against a defendant who is
22 immune from such relief.
23      The Court's screening of the FAC under the foregoing statute is
24 governed by the following standards. A complaint may be dismissed as a
25 matter of law for failure to state a claim for two reasons: (1) lack of a
26 cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.
27 See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In
28 determining whether the complaint states a claim on which relief may be

granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiff. See Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Further, since Plaintiff is appearing pro se, the Court must construe the allegations of the complaint liberally and must afford Plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)). Moreover, with respect to Plaintiff's pleading burden, the Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted, alteration in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (holding that to avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)).

     After careful review and consideration of the FAC under the foregoing standards, the Court finds that it suffers from the pleading deficiencies discussed below. Accordingly, the FAC is dismissed with leave to amend. See

1  Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (holding that a pro se
2  litigant must be given leave to amend his complaint unless it is absolutely clear
3  that the deficiencies of the complaint cannot be cured by amendment).

### A. Plaintiff's Official Capacity Claims Fail to State a Claim

Plaintiff names each of the Defendants in his or her official capacity. All six Defendants are state officials. In Will v. Mich. Dep't of State Police, 491 U.S. 58, 64-66 (1989), the Supreme Court held that states, state agencies, and state officials sued in their official capacities are not persons subject to civil rights suits under 42 U.S.C. § 1983. The Supreme Court reasoned that a suit against a state official in his or her official capacity is a suit against the official's office, and as such is no different from a suit against the State itself, which would be barred by the Eleventh Amendment. Id.; see also Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999); Stivers v. Pierce, 71 F.3d 732, 749 (9th Cir. 1995). In addition, "the Eleventh Amendment bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, i.e., money damages." Bair v. Krug, 853 F.2d 672, 675 (9th Cir. 1988).

To overcome the Eleventh Amendment bar on federal jurisdiction over suits by individuals against a State and its instrumentalities, the State must have consented to waive its sovereign immunity or Congress must have abrogated it; moreover, the State's consent or Congress' intent must be "unequivocally expressed." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984). While California has consented to be sued in its own courts pursuant to the California Tort Claims Act, such consent does not constitute consent to suit in federal court. BV Eng'g v. Univ. of Cal., L.A., 858 F.2d 1394, 1396 (9th Cir. 1988); see also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985) (holding that Art. III, § 5 of the California

Constitution did not constitute a waiver of California's Eleventh Amendment immunity). Moreover, Congress has not abrogated State sovereign immunity against suits under 42 U.S.C. § 1983.

Under the foregoing authorities, Plaintiff's damages claim against all six Defendants in their official capacities is barred by the Eleventh Amendment.

**B.    Plaintiff Fails to State a Claim Against the Supervisory Defendants**

Supervisory personnel generally are not liable under 42 U.S.C. § 1983 on any theory of respondeat superior or vicarious liability in the absence of a state law imposing such liability. See, e.g., Redman, 942 F.2d at 1446. In Iqbal, 129 S. Ct. at 1948, the Supreme Court reaffirmed that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior liability." However, the Ninth Circuit has concluded that, at least in cases where the applicable standard is deliberate indifference (such as for an Eighth Amendment claim), Iqbal does not foreclose a plaintiff from stating a claim for supervisory liability based upon the "supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), cert. denied, 132 S. Ct. 2101 (2012). The Ninth Circuit thus held:

> A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.' '[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.'
>
> "The requisite causal connection can be established . . . by

setting in motion a series of acts by others,' or by 'knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury.' 'A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'

Id. at 1207-08 (internal citations omitted, alterations in original). In addition, to premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a "direct causal link" between that policy and the alleged constitutional deprivation. See, e.g., City of Canton v. Harris, 489 U.S. 378, 385 (1989); Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

Here, Plaintiff names Secretary Beard, Wardens Cash and Katavich, and Chief Medical Officers Lee and Youssef as Defendants, but Plaintiff fails to set forth any specific allegations that these Defendants personally participated in Plaintiff's treatment. Instead, Plaintiff alleges generally that these officials are "responsible" for the "overall health care" or "all around operations" at CIM and WSP.

These allegations are insufficient. Plaintiff has altogether failed to allege that these supervisory Defendants were personally involved in the alleged constitutional deprivations, or that these supervisory Defendants had any knowledge of, or any connection whatsoever with, the medical care given to Plaintiff. Nor does Plaintiff set forth any factual allegations that these supervisory Defendants personally promulgated any policy that had a direct causal connection with the constitutional injuries of which Plaintiff

complains.[1] Plaintiff's claim against the supervisory Defendants accordingly fails to state a claim.

### C. Plaintiff Fails to State a Claim that Dr. Cho Acted with Deliberate Indifference to His Medical Needs

The Eighth Amendment proscription against cruel and unusual punishment also encompasses the government's obligation to provide adequate medical care to those whom it is punishing by incarceration. Estelle v. Gamble, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed 2d 251 (1976). In order to establish an Eighth Amendment claim based on inadequate medical care, Plaintiff must show that Defendants were deliberately indifferent to his serious medical needs. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

The test for deliberate indifference consists of two parts. First, Plaintiff must show a "serious medical need" by demonstrating that failure to treat a condition could result in "further significant injury or the unnecessary and wanton infliction of pain." Id. (citation omitted). Second, Plaintiff must show that a defendant's response to the need was deliberately indifferent. Id. Plaintiff may establish this second prong by showing (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (2) harm caused by the indifference. Id. Put another way, Plaintiff must show that the prison officials were subjectively aware of his serious medical need and failed to

---

[1] Indeed, by way of contrast to the Complaint herein, the complaint in Starr specifically alleged numerous incidents in which inmates in Los Angeles County jails had been killed or injured because of the culpable actions of the subordinates of Sheriff Baca; specifically alleged that Sheriff Baca was given notice of all of these incidents; specifically alleged that Sheriff Baca also was given notice, in several reports, of systematic problems in the county jails under his supervision that had resulted in these deaths and injuries; and specifically alleged that Sheriff Baca did not take action to protect inmates under his care despite the dangers created by the actions of his subordinates, of which he had been made aware. See Starr, 652 F.3d at 1216.

adequately respond. Conn v. City of Reno, 591 F.3d 1081, 1096 (9th Cir. 2010) (citing Farmer v. Brennan, 511 U.S. 825, 828 (1994).

The indifference to a prisoner's medical needs must be substantial; mere indifference, negligence, or even medical malpractice will not support a claim of constitutional deprivation. Lemire v. California Dep't of Corrections and Rehab., --- F.3d ---, 2013 WL 40075558 at *15 (9th Cir. August 7, 2013) (citing Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)). "Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

Plaintiff satisfies, at least at the pleading stage, the first part of the deliberate indifference analysis. He alleges that Dr. Cho's failure to treat his back pain resulted in the infliction of unnecessary pain, in that Plaintiff stayed assigned to a top bunk and had to endure severe pain, even when assisted by other inmates, just to get into bed. See FAC at 5(b) ("Plaintiff was in such pain that he had to other inmates help him up to the upper bank and he often ended in tears."). It therefore appears that Plaintiff has alleged facts sufficient to show that he had a serious medical need.

Whether Plaintiff can satisfy the second part is a closer question. The gravamen of Plaintiff's claim against Dr. Cho is that he failed to provide care, in the form of doctor's orders for a lower bunk or an MRI, when he examined Plaintiff in May 2012. Plaintiff alleges that "Dr. Cho treated Plaintiff with deliberate indifference as he was frustrated with the language barrier and waved Plaintiff's complaints of severe pain off as being dishonest." See id. at 5(a). He also alleges that "Dr. Cho thought Plaintiff was faking his painful cries." See id. at 5(b). But even construed liberally, these allegations fall short of supporting an inference that Dr. Cho was subjectively aware of Plaintiff's serious medical need and failed to adequately respond. A showing of nothing

more than a difference of medical opinion as to the need to pursue one course of treatment versus another is not sufficient. See Wilhem v. Rotman, 680 F.3d 1113, 1123 (9th Cir. 2012); cf. Akhtar v. Mesa, 698 F.3d 1202 (9th Cir. 2012) (reversing order dismissing prisoner's deliberate indifference claim because complaint alleged that prison officials ignored medical orders when they assigned him away from a lower bunk). In other words, even if Dr. Cho thought Plaintiff was malingering and was incorrect in his assessment, these facts, without more, do not state a claim of deliberate indifference.

For the foregoing reasons, the Court concludes that the allegations of the FAC are insufficient to state a claim for deliberate indifference to serious medical needs against Dr. Cho. The Court cannot determine, however, that further amendment to the FAC would be entirely futile. Leave to amend will accordingly be granted.

**********

If Plaintiff still desires to pursue his excessive force claim, he shall file a Second Amended Complaint within thirty-five (35) days of the date of this Order remedying the deficiencies discussed above. Plaintiff's Second Amended Complaint should bear the docket number assigned in this case; be labeled "Second Amended Complaint"; and be complete in and of itself without reference to the prior complaints or any other pleading, attachment or document. The Clerk is directed to send Plaintiff a blank Central District civil rights complaint form, which Plaintiff is encouraged to utilize.

///
///
///
///
///
///

**Plaintiff is admonished that, if he fails to timely file a Second Amended Complaint, the Court will recommend that this action be dismissed with prejudice for failure to diligently prosecute.**

Dated: October 2, 2013

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge